and legal helpers doing business as Macy and Alamante P.C. On behalf of the Appalachian, Ms. Jennifer L. Friedland. On behalf of the Appalachian Cross Appellant, Ms. Emily Sheep. Thank you, Ms. Friedland. If you would step up, we'll take up the preliminary motion first. Apparently there's been a motion. The file is under seal, or parts of it are under seal. There's been at least represented to us a motion to clear the courtroom of anybody not involved in the case and also to not release the tape of this oral argument. Is that correct? That's correct. Can you tell us why? Because this case deals with source code that we contend is a combination trade secret. It's our duty to protect that secret throughout this litigation. Are you going to be revealing that trade secret here in the courtroom? I don't believe that the specifics of the source code are going to be discussed today. I just wanted to make that motion so that we can not address a forfeiture issue later as far as how Mr. Geraci protects his trade secret. But the source code, as you indicated, nothing in particular. We're talking generalities of similarities between different programs and things of that nature. I didn't see anything in the briefs about specific source code. That's right. I'm not real computer literate, so I may have missed it. It's in the record, and I don't believe it's going to be discussed today. It's in the record that's sealed. That's right. That is right. But I just wanted to make sure that there was no forfeiture issue later if that discussion comes up. Okay. If we could hear from Ms. Shoup on this issue. Your Honor, I think I agree that there's not going to be any specifics discussed today with respect to the source code. However, if Your Honors want to seal the tape from today, we certainly don't have an objection to that. Again, we don't believe that there's going to be anything specific discussed. Okay. We're going to take a short, very short recess. Let's do a motion for a minute. I don't know. I don't know. I don't know. All right. The court is back in session. We have taken the motion under advisement. At this time, the motion will be denied. The courtroom will remain open. The tape will be released. If at any time during the argument anything comes up where anything that you feel is going to be revealed that is under seal and should remain under seal, let us know. We'll revisit that. But as of now, we don't anticipate that happening. So, Ms. Friedland, you may proceed with your argument. Good morning, Your Honors. Counsel, may it please the court. My name is Jennifer Friedland. I represent Mr. Peter Francis Geraci in this appeal. I first of all want to thank you for taking my motion basically on an emergency basis. So, but what this case is about is a combination of- Can you do me a favor? Yes. I don't know if I'm losing my hearing. Okay, sorry. Yeah, you might want to pull that closer to you so you're not, like, you're not uncomfortable. I mean, pull that microphone. Push it. Okay. There. I don't want you to be uncomfortable, but- Thank you. Is that better? Yes. Okay. This case is about a combination trade secret, what Mr. Geraci alleges is a combination trade secret, and that is his law practice management program, GAP and GAP-C. Summary judgment in this case should be vacated first and foremost because whether a trade secret exists and whether there is misappropriation of a trade secret is undoubtedly a question of fact for a jury to try. The second reason why this case, this summary judgment should be vacated is because it's clear from the transcripts and the trial court's ruling that the trial court did not consider whether GAP or GAP-C is a combination trade secret. And I want to just, for the purposes of this argument, please keep two facts in mind here. The development of GAP-C and LH-1 did not begin at the same starting point when Mr. Amidon, the programmer that worked for both parties, when he was working for both parties. That's not when Mr. Geraci's program was developed. Mr. Geraci started using computers in his law practice in 1983. That's 13 years prior to hiring Mr. Amidon. During that time, he worked to develop his computer software and he had other programmers working on it. That is the software and the source code that Mr. Amidon had access to when he was hired by Mr. Geraci in 1996. Subsequently, a person named Kevin Churn, who was employed by Mr. Geraci and then became employed by Legal Helpers, suggested to Legal Helpers that Amidon be hired because of his work with Mr. Geraci. The second fact to keep in mind during this argument is that Mr. Geraci disclosed GAP-C as a combination trade secret from the very outset of this case. Are you saying that the trial court didn't look at it as a combination trade secret but looked at the individual components of it to see whether each one was a trade secret? What the trial court did is determined that GAP-C is the progeny of a piece of software called Zachary. Zachary. Zachary, right. The trial court looked at different components and pieces, like you suggest, of this combination trade secret and said, well, that's in the public domain. The trial court also used patent law terms and said, these are obvious, these are common, those type of patent law terms. And that's not the test of trade secret or combination trade secret. So the trial court broke down his combination trade secret and determined that because there were parts of it that are in the public domain, that therefore it was not a trade secret. The word combination was not used in the trial court's ruling. So we submit that that was not even considered, that the trial court may have just been looking at some of the other components of the combination trade secret that Mr. Gerasi also claimed were trade secrets. And, you know, I suggest that you take a look at this case called Decision Insights v. Sensu Group. It's a Fourth Circuit decision, and it is applying Virginia law. But Virginia has also adopted the Uniform Trade Secret Act. This case is exactly on point, exactly what happened, and it has to do with source code. In that case, the plaintiff identified source code as a combination trade secret and then produced it in its entirety, which is exactly what Mr. Gerasi did here. In that case, the trial court had difficulty in determining whether the plaintiff identified trade secrets with specificity. And in that case, the plaintiff was asked to, quote, clearly differentiate between the material, which is public knowledge, from the material, which is allegedly a plaintiff's trade secret. And that's what the trial court did here. The trial court asked Mr. Gerasi to analyze his combination trade secret to determine what pieces of it were in the public domain. The Fourth Circuit in that case, and also summary judgment was entered in that case on the issue of whether a trade secret exists. And it was entered against the plaintiff, just like here. And so the Fourth Circuit determined in that case that the crucial characteristics of a trade secret is secrecy. It's not novelty. Novelty in the patent law sense is not required for a trade secret. The Fourth Circuit also determined that software can be a protectable combination trade secret, and that the production of an entire piece of software and its source code is an acceptable method for identifying a trade secret. All of that is exactly what happened here. And like what the Fourth Circuit did in that case, the summary judgment should be vacated, and there should be a jury trial on this case. Did the trial court in this case find that the expert opinion hired by the plaintiff lacked foundation, the opinion lacked foundation? I don't believe the trial court made any reference to the expert opinion lacking foundation. We had competing expert opinions. But that's the argument of your opponent, is that the expert opinion lacks foundation. The expert opinion does not – oh, because of what he did not do, what he didn't look at, I understand. What the trial court asked Mr. Wayand, the expert, to do was to look at – and he was at the hearing when the trial court asked him to do this – was to look at the two pieces of source code and compare one to the other to see if he's able to determine, and he did determine, that some of that source code was copied onto the other piece of software. He was not asked to research the history of Zachary or know everything about a bankruptcy law management system. He was only asked to find similarities in those two source codes, and that's exactly what he did. So I don't believe that, you know, what he didn't do, you know, it's really up to a litigant to determine what – and the court to determine what the expert job is to look at. So, no, I don't believe that it lacked foundation. I also encourage you to look at the 3M v. Privil case, which is a Seventh Circuit case, which also states very clearly that a trade secret can exist in combination of characteristics and components, even if some of them fall within the public domain. So, in this – How many – Mr. Geraci had a GAP program? That's right. What does GAPC mean? GAPC – GAP was the – GAPC is for Geraci Automated Program. That was originally a modification of a program called Sales Control, and he modified it to a point where it became his own. Now, GAPC is a DOS version of his – they basically took what they liked at Sales Control and hired programmers to create GAPC, and it's a DOS-based law practice management system. Then were there not two other programs that are in contention? One is the program that Mr. Amidon was selling to as his own. Right. The other – Also a program that the legal helpers was using. That's correct. That was distinguished. These three programs are not identical as between any single one. The test – A doesn't equal B nor C. There are many identicalities among all of these programs. You can't say that GAPC and LH1 are the same, but the reason why you can't say that is because when we looked at these two programs, we were looking at the 2006 version of GAPC and the 2009 version of LH1. And what happened between 2006 and 2009 is that Mr. Amidon was no longer working for Mr. Gerasi. He was only working for legal helpers. So they could have changed that. And the follow-up to that is that they don't have to be the same to be a trade secret violation because in the Thermodyne and the Mangren case – There are two lawsuits in one, and that is the lawsuit that your client might have against Mr. Amidon for his alleged expropriation of GAPC. And then the other cause of action is a cause of action against legal helpers for their expropriation of the trade secret. No, because there's only one place where it could be separated, and that is that you're right, there's GAPC, but we contend that both legal helpers and individuals who work there – May I finish? You may. Both those who work there and Mr. Amidon all misappropriated GAPC. Separately, Mr. Amidon created a piece of software called Best Client. Best Client is a Windows-based version. We contend a version of GAPC. So he sold that, and it has economic value because he sold it, and Joseph Doyle, another bankruptcy attorney, purchased that. So I don't believe that it can all be separate because we're all talking about – We're talking about one – It started in 1983. Mr. Terasi's knowledge and his development of this program lasted for years before Mr. Amidon had it, and then Mr. Amidon used it to then create several different – Taking portions of it and creating certain things. Exactly. It was a GAP4, was it not? Is there a GAP4? There are different versions of GAP, but it's constantly being developed. My question is, was GAP4 a Windows, like the newer version of GAPC, only for Windows? They're right now working on a Windows-based version of GAP, and it's called GAPnet, it's called GAP4, yes. Justice Burke, if I can go just a little bit over her time because I have a question that has been something that I've been struggling with, this partial motion to dismiss due to the October 13, 2000 release. Can you talk to that? Absolutely. Mr. Terasi was involved in litigation with these same defendants in 2003, which had to do with his infotapes, which is his method of advertising. That was a trademark case. It had nothing to do with this case. There were no allegations of trade secret misappropriation. They executed a release to settle that case. That release, we contend, was a specific release to dismissing claims having to do with infotapes. Well, the trial court basically agreed that it misapplied the law regarding general and specific releases. It did. It wouldn't allow you to go back because of the time that it expired, and the discovery that it had gone on. But I want to ask you a very specific question, and that is, by filing the amended complaint, how are these preserved? It went under Banami and Foxcroft and a plethora of cases from the Illinois Supreme Court. These were preserved because they were made reference to. The history of the litigation and when they were dismissed were made reference to in the complaint documents.  Do you have to be a little more specific in actually saying that we are preserving these claims? We contend that Banami uses the word referenced, and I believe that, and I understand. Banami was a footnote, wasn't it? It was, yes. And I understand that, and I believe that there's really no persuasive law on this issue because there's a big gap between not making any mention of what was dismissed and then incorporating the entirety of all of those claims that were dismissed. Honestly, we're right here in the middle. We make reference to what was dismissed and why it was dismissed and when it was dismissed, and we submit to you that that is enough.  Are you saying in some fashion we intend to preserve these claims? That clearly wasn't done here. You referenced the dismissal. I understand that. Right. But clearly it wasn't done here that there was any type of reference or intent to preserve the claims, correct? I disagree because of, and, you know, I can't speak for the attorneys who handled this, but I believe it was their intent to refer to that. And I will also point out that they tried to amend the complaint, you know, to once that decision, Banami, came down, they tried to amend the complaint knowing it was, you know, coming up. So we submit that what they did was absolutely enough to preserve these claims. You're not really arguing that Banami was this landmark brand-new case that said this, are you? No, no, I'm not. Because it was out there since Foxcroft. I understand that. I don't even know. No, I understand that. Yeah. But some important people were on that case. You know, I just want to close with this is clearly an issue of fact for a jury to hear, and we ask that you vacate this on your judgment and remain it for a jury trial. Thank you. We'll let time for rebuttal argument. Ms. Shoup, you may proceed. May it please the Court. Counsel. My name is Emily Shoup, and I represent the Legal Helper's Defendants in this appeal. Picking up on Your Honor's last point, Mr. Gerasi pled over his claims for trade secret misappropriation that occurred prior to October 13, 2003 by filing his amended complaint. In paragraph 72, or excuse me, 92 of that amended complaint specifically limited his claims to the absent omissions that occurred on or after that date, and he didn't adopt or incorporate his dismissed claims. That's after the trial court ruled the way she ruled, correct? Correct. And the trial court, didn't she admit that she ruled incorrectly? The trial court made some statements to that effect when Mr. Gerasi brought a motion to reconsider seven months later. However. Seven months, and so you're stating that that was too late, time had passed too late. That was too late, and that's what the circuit court agreed with. However. However. Wasn't discovery ongoing? At the point that they filed their motion to reconsider it, that was May of 2011. At that point, all discovery had been completed, and that actually came three days after their expert was deposed. Okay. So we had proceeded through all discovery. They pled over it. All right, so based upon discovery, they learned certain things. And in any case, generally, in any case, can't you amend your pleadings based upon what you've learned in discovery? You can amend pleadings based on what you learned in discovery. However, the error that Mr. Gerasi asserted in bringing the motion to reconsider wasn't based on anything he learned in discovery. Rather, seven months after the fact, he claimed that the circuit court misapplied the law. And the circuit court said seven months to wait to bring this motion to my attention is untimely. You've pled over it, and we've gone through all discovery in this case based on the claims as you've limited them in this amended complaint. Now, I will say that the circuit court's ruling with respect to Mr. Gerasi's motion to dismiss ultimately had no bearing on her summary judgment ruling. And that's because Judge Wheaton found specifically that GAPC is not a trade secret. Their entire argument today has been based on a mischaracterization of that ruling. After summary judgment argument, Judge Wheaton ruled that GAPC was not a trade secret on two points. Can we go back and discuss what Mary raised? The trial court found that the release was effective up to a certain point but wasn't effective thereafter. Is that not correct? It was October 13th, 2003, was the cutoff date. And if you expropriate something, doesn't it continue into the future if you continue to control the goat or the chicken or the pig? The fact that you may have taken it in December doesn't mean that you don't have it in June if you still have it in your possession. So if, in fact, the release was effective, why wasn't it effective to cause the dismissal of this lawsuit on the basis that this entire claim was released and not just a portion of time relative to this claim? Because the circuit court found that it wasn't a trade secret. You're not answering my question because that's an aside. That's an additional reason for why the judgment should be affirmed. But it has nothing to do with whether or not the claim was waived in its entirety or whether it wasn't waived in its entirety. Well, there's no continuing misappropriation, and there was no evidence presented that there was anything misappropriated after. That isn't the question that I've been asking you about. What I've been asking you is if, in fact, the release was effective for a period of time, one day, one minute, one second, why wasn't it effective for eternity? The release is effective. I thought it was only effective up until the date that you just related. And thereafter, there was at least an alleged cause of action, which then was terminated because of the finding that the trial court made that this was not a trade secret. So, technically, the trial court dismissed a portion of this cause of action, time-wise, on a release, and then dismissed the other half on lacking in merit. That's correct. My point is, how is it that if this is a waiver of a claim, how can you waive the claim only for a second or a minute or a day or a year or three years? Why isn't it waived ad infinitum? Is there some non sequitur here that you can't see? Because I think I see it, and I'm asking you to explain how can the trial court determine that there's a waiver, but it doesn't apply in futuro or whatever, into the future? Well, what the circuit court found was that any claims of misappropriation that occurred prior to October 13, 2003 were barred by the release. And she allowed Mr. Geraci to proceed on his claims for misappropriation that may have occurred after October 13, 2003. And what she found was that the particular trade secret that Mr. Geraci asserted in this case, Gap C, was not a trade secret. Moreover, there was no evidence presented at the summary judgment stage to show any misappropriation after October 13, 2003. Her ruling on summary judgment was based on two things. First, that Gap C was nothing more than an obvious rudimentary software program. Wasn't there evidence from weigh-in that there were additional transfers of this code post-2003? There were not. If you look at the submission that we made to the circuit court on summary judgment, we presented a series of what we said were undisputed facts. And in response to that, Mr. Geraci provided a paragraph-by-paragraph response to those facts. And if you look at that chart, which we put side-by-side, our supplemental appendix starting at page 16, you can see that Mr. Geraci had no response at all for a number of those facts that we asserted. I'm going to try and find you some specific examples. It was undisputed that there was no post-October 2003 misappropriation. It was also undisputed, and that's at paragraph 101, that Gap C was not copied into LH1 in any form after that date. However, all of that goes to the issue of whether or not something was misappropriated. And you can't have misappropriation if you don't have a trade secret to start with. And that's what Judge Wheaton found. She found that Gap C, Mr. Geraci's program, was nothing more than a common rudimentary software application. And she also found that he presented absolutely no evidence whatsoever that that program provides Mr. Geraci with any economic value that's tied to secrecy. Why is everybody protecting these things, though? Why does Legal Helpers protect their LH1 program? Why do people, why do they have to sign documents and say that they're not going to release LH1 if these things don't have some type of value to the firm? I can't speak to the, you're referencing the agreement Mr. Chern signed. I can't speak to that agreement. However, I will tell you that all of the Legal Helpers defendants testified that they don't believe that LH1 is a trade secret. And our own experts said that LH1 is nothing more than a common rudimentary application. So they give it to me today if I ask for it. If you ask for it. Well, the fact that it's not a trade secret doesn't mean that they can't keep it in a locked vault. That's absolutely correct. I mean, a diamond ring is not a trade secret, but you keep it locked up, don't you? And you don't give it away to people who ask for it, do you? No, and that's correct. It's an asset, but it may not be a trade secret. Right, it may not be a trade secret. And that's exactly what Judge Wheaton found here. Didn't Mr. Geraci present evidence of his own, not of the expert, but of his own, of the amount of time and effort that went into producing this and the cost that went into producing this? And isn't that then a factual issue combined with weigh-ins affidavit that really a jury needs to look at, not some judge on summary judgment? No, and I will tell you, with respect to the development costs, the only evidence that was offered at the summary judgment phase was Mr. Geraci's single self-serving statement that GAPC cost him several million dollars to develop. And we can dismiss that out of hand. Well, there was no other evidence presented on that point. We didn't receive any documents to support that. There was no other evidence presented other than that single statement. Now, with respect to the time that it took him to create this, you've heard a lot about how Mr. Geraci began using a computer in 1983, and that continued all the way up until 1996 when he hired Mr. Amidon. The undisputed evidence at summary judgment was that GAPC took a matter of months to create. Mr. Amidon started working on it in the fall. That wasn't weigh-ins opinion. Weigh-ins opinion was looking at the amount of source code that was written. It would take years to write this thing. That's not what occurred, though. Again, if you were coming to us after trial and we were looking at this under a manifest weight standard, that's one thing. We're looking at this de novo. We're talking about summary judgment and denying someone their day in court based upon undisputed facts, which are fine. Summary judgment's fine if, in fact, the facts are undisputed. But here we have an expert opinion who says it takes years to write this amount of code, and you're saying, well, our experts and everybody else says no. Well, it wasn't just our expert, Your Honor. It was Mr. Geraci himself. There was a document produced in Discovery called The History of Database Usage at Geraci Law, which outlined the various iterations of computer programs that Mr. Geraci used. And that document says that Mr. Amidon started working on GAFC in the fall of 1998, and then it went online at Geraci Law in February of 1999. Mr. Geraci admitted at his deposition that that document was accurate. GAFC was up and running in a matter of months. And with respect to the development cost, there was no evidence presented at summary judgment that this actually took several million dollars to develop. Doesn't this argument, pardon me for interrupting this, but doesn't this argument that you're making relate to a determination of value based upon replacement cost? It does. And why couldn't a straight seeker have an intrinsic value not based upon replacement cost? Because I think it would be fair to say that if I were to buy a Windows program for my computer, the cost of me replacing that, if I were to hire people, would be astronomical based upon the price I have to pay in a software store to buy the program. So one is, in fact, let's take the bull by the horns. There are basically three types of determination of value. The income approach, the sale at arm's length between a willing buyer and a willing seller, and quote unquote cost of replacement. So the mere fact that we're talking about just one way to value this as opposed to what would the value of this be if Mr. Gerasi decided to license this and sell it to third parties like yourself or at least like your client, why wouldn't that be a criteria upon which value would be a material issue of fact? Well, it could be, but the value of the program isn't necessarily. You should say damages. It's an issue of damages. And what we're really looking at here is what economic value does GAP-C provide to Mr. Gerasi and his firm that's tied to its secrecy? Well, wasn't Amidon fired and then didn't he sign some paper regarding GAP-C? Mr. Amidon was terminated from Gerasi Law, and he did sign some sort of agreement, I believe, upon his dismissal, but I don't know what the terms of that were. I don't represent Mr. Amidon. Isn't it submitted that Best Client is GAP-C? Best Client was a separate program used by another defendant, in this case Mr. Doyle. That is a separate product from what my clients are using, which is LH-1. Isn't all that a question of fact for the trier of fact? It's not a question of fact because a question of fact assumes that both sides presented some evidence of summary judgment. And they didn't do that. And Mr. Gerasi didn't present any evidence on a number of points. And if you go through the side-by-side of the undisputed facts and summary judgment that's in our supplemental appendix, you'll see time and time again Mr. Gerasi had no response for the evidence that was put up by the legal helper's defendants. And one important point is that GAP-C was built using this product called Zachary. And Zachary is a product that in the late 1990s anyone could purchase and use to create a database management application. It was designed to be used in any type of business. And Mr. Gerasi used it exactly as it was intended to be used. Now we're not denying that somebody can have a combination trade secret. Those certainly exist. But GAP-C isn't one of them. In order to have a combination trade secret, you have to show that you did something with the combination of elements that is unique and that provides you with a competitive advantage. There was no evidence presented on those points. Well, Amado was working for legal helpers in 1997 while he was still working for the plaintiff, right? That's correct. And so when he developed their software, LH1, which is alleged took from Peter Francis Gerasi, he was paid $15,000 to $30,000 for the development of that information, correct? I believe that's what the testimony is. And it's Mr. Gerasi's position that that information, some of the information he garnered, he garnered from his office, which was a trade secret, correct? That what Mr. Amado used was a trade secret? Yes. That's Mr. Gerasi's position. However, the evidence in summary judgment did not establish that GAP-C is a trade secret. Mr. Gerasi did not do, nor did his expert do, any analysis to compare what GAP-C is and what it does to what other products that are available on the market. And at one point on legal helpers' network, wasn't GAP-C or Gerasi Law Firm on there? It never showed up on any of the documents for legal helpers? As I stand here right now, I don't believe so. I thought there was testimony that somebody saw something that said property of Gerasi Law. I think that was, that came from Mr. Gerasi's deposition, I believe. And I believe that was hearsay testimony that was never confirmed by any other source. So therefore, it's not believable? I mean, we certainly haven't seen any other. There's no other source that controverted it, so therefore it's uncontroverted. I would like to ask you a question. Didn't Wayland testify to that? No. I don't believe so. Did the trial court make a determination that as a matter of law, there are no material issues of fact in your entitled summary judgment? And in the process thereof, did it decide that you had affirmatively shown that this was not unique? Or did the trial court determine that the plaintiff had arguably established a prima facie case? The circuit court ruled that there were no material issues of fact on Mr. Gerasi's trade secret claim because he could not establish that there was economic value tied to secrecy or that this product was a trade secret. And if you look at the evidence that was presented on summary judgment, we presented a amount of evidence to show that what GAPC is and what it does and how it was created by virtue of Zachary is not anything specialized. And there was no contrary evidence presented on those points. We presented evidence from our expert that was undisputed that the features and functions within GAPC were common, obvious, and used in a variety of software applications. And in fact, Mr. Gerasi's own expert concluded that of, I think it was 151 functions contained within GAPC, a number of those weren't trade secrets. Some of them were, though. He said some of them were. So how do you distinguish the PRBL case that your opponent cited? Well, the PRBL case stands for the proposition that you can have a combination trade secret, but the combination of functions that you put together, even if they're in the public domain, has to be unique. And what the evidence in this case showed was that he couldn't establish that what GAPC did was any different than some other database management software program that he could have purchased on the market. There was no evidence to that effect. Rather, all the evidence in summary judgment demonstrated was that this was just a common database application. Then why would they pay? Why would legal helpers pay $30,000 to Amidon to produce LH1 when they could just go on the market and buy something? Well, my client certainly could have gone to the market and bought something. They hired Mr. Amidon to create something. To develop their trade secret. Well, we don't consider it a trade secret, and, in fact, all of the defendants testified to that effect at their depositions. Then why did you step up here prior to us starting and agree with your opponent that we should seal the record because some of this information might come out? I don't think I agreed with her. It's our position. You didn't object. You did agree. You said, well, I don't have an objection. I agree. We could seal it. What was that for? Efficiency. I mean, we don't believe that anything in this case is a trade secret, and we don't believe that. Why was it sealed? There was a protective order in the case requiring everything to be sealed until the conclusion of the case. At some point later, I believe a number of things were unsealed and a number of things were not filed under seal, but there was a protective order in this case, and we abided by it. I'd like to turn to you. Well, just one more point. If you put a bunch of different things together that are all not trade secrets, but then you make it something that's kind of special to your industry, your practice, whatever, you know, like Minnesota mining is one of those type of cases, isn't that a trade secret? It can be a trade secret, but you have to show that the combination as you put it together is unique and that it affords you a competitive advantage, and that's what there was no evidence of in the circuit court. There was no evidence that GAPC gave Mr. Gerasi any competitive advantage by virtue of its secrecy. Other than his testimony. Other – well, in his testimony, it wasn't that it provided him with an economic advantage tied to its secrecy. What Mr. Gerasi actually said was it allows him to run his business more efficiently, and with respect, any software program allows a business to run more efficiently. That doesn't necessarily make it a trade secret. He hasn't explained what GAPC does that is different and that allows him to do something that his competitors cannot. Can I address the cross-appeal real quick? Yes, I do. The issue of what constitutes bad faith under Section 5 of the Illinois Trade Secret Act is an issue of first impression in Illinois, and this court gets to decide what the standard is and set the bar for a trade secret plaintiff. Rule 137 requires anyone filing a case to make a good faith effort to investigate their claims, and we submit that a trade secret plaintiff has a slightly heightened duty to do so in light of Section 5. The question for Your Honors is whether a trade secret plaintiff is required to investigate the specific product he claims is his trade secret before filing a lawsuit to protect it. And if Your Honor finds that the answer to that question is yes, then the circuit court's ruling on the Section 5 motion must be reversed. It's clear that Mr. Gerasi didn't do any investigation to determine what GAPC was and whether or not it was a trade secret before he filed the suit. We would urge you, and I think the parties all agree on this, to accept the two-part test that was used by the circuit court, which requires finding that the claim was objectively specious and that the plaintiff engaged in subjective misconduct in bringing and prosecuting the claim. Are you asking for 137 sanctions on the appeal as well? The motion that we filed in the circuit court was not a Rule 137 motion. Rather, it was a motion for fees under Section 5 of the Trade Secret Act. I'm referencing 137 only because we believe that that duty to investigate is made clear in all cases, but Section 5 makes it specific to trade secret cases. And it's clear that the legislature wanted trade secret plaintiffs to make sure that they had a leg to stand on before filing suit. And that makes sense because trade secret cases are often between competitors and involves complex discovery into their confidential business information. So it makes sense that a trade secret plaintiff should have to understand his product or his information in his case before he brings an action. And it's clear from the evidence that was presented at the five-day hearing in the circuit court that Mr. Geraci, nor his expert, did any of those things. Now, the circuit court found that Mr. Geraci relied on both the advice of his counsel and the advice of his expert in bringing and maintaining the suit, and that is completely unsupported by the evidence. With respect to the advice of his counsel, there was no advice of counsel, defense asserted. Mr. Geraci at the hearing tried to present evidence of privileged conversations, and the circuit court wouldn't allow it because he didn't want to waive the privilege. And he admits in his brief to you that he was careful not to present specific evidence about conversations with his counsel because he didn't want to waive that privilege. He can't have it both ways, and there was absolutely no evidence presented at the hearing regarding what his counsel told him. Now, with respect to what his expert told him, Mr. Wayand wasn't retained until October of 2010, about six weeks after the suit was filed. Mr. Wayand didn't receive a copy of the GAPSI software until December, four months after the suit was filed. Could we go back and revisit what you said about you can't have it both ways? In the first instance, it would seem that the non-waiver or the attempt at preserving privilege related to his clause of action in the prosecution as a plaintiff who has a burden of proof and a burden of going forward versus being a defendant in what we're now referencing. And so he doesn't have the burden of going forward. He has the burden of response. And had you not raised this argument, he wouldn't have raised a reply, I don't think. I don't know why he would spontaneously say, you know, I did this based upon my experts and my attorneys. So could you clarify or enlighten me as to how he can't have it both ways? Because it seems to me there's a slight, if not substantial, distinction between the two situations. Well, in essence, what he attempted to do at the hearing, which we, by the way, had months earlier anticipated that he might do when we raised it with the circuit court, we said if he's going to present an advice of counsel defense, he waives the privilege and we're entitled to discovery into what his counsel was telling him with respect to the merits of his suit at the outset of the case. And the circuit court said we're not getting into all of that. That was not raised in the briefs on this motion, and I'm confining the scope of the hearing to the pleadings as they are today. That wasn't, there was no advice of counsel defense pled in his brief. And if he had intended to raise that, he would have had to call his attorneys to provide that testimony. He didn't do so. He attempted to introduce an email communications at the hearing, and the circuit court declined to allow him to do it. So for the circuit court to rule that he relied on what his attorneys appeared to have been telling him was not supported by the evidence. It wasn't a reasonable inference from the evidence? Because there was some indication that he consulted with his attorney before doing certain things. Why wouldn't that be a reasonable inference that his attorney told him, let's go ahead with this, as opposed to his attorney telling him, we're not going to do this, and he just did it on his own? Please stop nodding your head, sir, in the back. I greatly appreciate that. So can you explain that? I mean, a reasonable inference? Well, it would be a reasonable inference if there were some other evidence presented to infer that. However, what Mr. Gerasi said with respect to his pretrial investigation into whether or not Gapsi was a trade secret is that the only person's opinion who he relied on in determining whether or not Gapsi was a trade secret he should file this lawsuit was his own. That's Mr. Gerasi's own testimony. And why should you review this for anything other than abuse of discretion, as in any fee or sanction situation? Well, on the Section 5 motion, there's really a two-part analysis. The first is whether or not the evidence supports finding of bad faith. And the second is whether or not attorney's fees should be awarded. The circuit court didn't reach the second aspect of that test, which that would be reviewed for abuse of discretion. However, where the circuit court makes factual findings without a jury, those are reviewed for manifest weight of the evidence. And so we submit that's the appropriate standard to review the evidence presented at the circuit court hearing on the Section 5 motion. Counsel, you will have time for rebuttal argument on your fees issue. Ms. Freeland, rebuttal argument. Thank you, Your Honors. I would like to begin with addressing the Section 5 motion and the trial court's denial of same. First of all, I know of no obligation in case law having to do with trade secrets that a plaintiff hire an expert prior to filing the suit. I don't understand why that seems to be the standard here, because I don't believe it is. Second of all, the trial court heard five days of testimony on the Section 5 hearing. The trial court did not only hear Mr. Gerasi's testimony. The trial court heard his programmer's testimony, his expert's testimony. We heard testimony of one of his former employees. So I don't believe the focus here is on whether he relied on advice of counsel and whether the trial court based her decision solely on that, because she heard so much more. And also, the court, like Justice Burke had mentioned, can presume that because he had attorneys at the time he filed his lawsuit and their names are on his complaint. It's not a presumption, it's an inference. Inference. Thank you. That he may have relied on his attorney's advice. And the trial court did specify without going into confidential information. So I don't believe that that is an abuse of discretion. And, you know, as far as whether or not Mr. Gerasi understood his product prior to filing this lawsuit, he developed his product. He spent years working, and his testimony is. And, you know, the trial court didn't hear testimony in this case until the Section 5 hearing. And his testimony was that he would direct Mr. Stoolmaker, his employee and manager of this firm, as to the needs of what needs to be changed or modified or maintained with GAPC. Then Stoolmaker, Mr. Stoolmaker works with the computer programmer to make sure that those modifications are made. This is, by the way, still happening to this day. And then Mr. Stoolmaker tests the changes, the additions, the developing of the source code for problems. This is ongoing, this has been ongoing for years and years. This is how he develops his software, and it's what makes it, in legal helpers' terms, unique. Can you respond to counsel's argument that she made several times that the evidence was undisputed, that this was not a trade secret? Well, first of all, there was no testimony, there was no evidence presented to the court. Well, the evidence submitted at some judgment, the affidavits, the depositions. There are plenty of instances where Mr. Geraci presented evidence and discovery of the fact that there's economic value to GAP that relates to its secrecy. Those are that he couldn't buy this off the shelf. He looked for it and he has continued to look for it for years. And because he can't buy it off the shelf, he has to spend a lot of money and time developing that. And the court never heard testimony as to how much time and effort and money has gone into that. Additionally, we know because in Mr. Churn's deposition, he stated that he had recommended Mr. Amidon to legal helpers, Tom Macy of legal helpers, because he knew, because Mr. Churn worked for Mr. Geraci, that he knew how to work with a law practice management system that was multi-state, multi-jurisdiction. So that is evidence that there is economic value to the secrecy. They hired him. They hired his employees that already knew how to use GAP. And so there's evidence. Todd Winsack is a former employee. He said he didn't need to be trained when he went to work for legal helpers because he already knew how to work this DOS-based system. And the fact that the entire executable copy is located on their server, and by the way, that is after 2003, the day after Mr. Ryan produced his preliminary report, they produced that to us, and he wrote a supplemental report. It's the entire... If I recall, the program was on a locked room, all the computers in Mr. Geraci's office were secured with passwords, and essentially this program was under lock and key, would that be fair to say? That's absolutely fair to say. And just somehow it spontaneously appeared on the opposing party's computer? Well, what Geraci didn't know is for 10 years Mr. Amidon was also working for legal helpers, and when he found out that Mr. Amidon had removed his source code in its entirety from his office, he fired Mr. Amidon immediately. Would anybody who attempted to keep whatever their asset was a secret would be guilty of bad faith if they found out that a program that they had spent years developing was on somebody else's computer and decided that maybe there was an actionable report involved? I'm sorry, I don't understand. Would he be guilty of bad faith? The trial court seemed to deal with whether or not this person was relying in good faith on the opinions of this counsel and expert. It doesn't seem to appear to have thought about the facts in the case, which are the trial court determined that it wasn't a trade secret. But what does that have to do with whether or not you prosecute a case in good faith as to whether or not something that you've been protecting for years is found on someone else's computer and you don't think that's maybe you're entitled to some compensation? Is that bad faith? Is that bad faith as a matter of law? Is that bad faith against the manifest way of the evidence? Is it really relevant as to whether or not his lawyer told him he shouldn't do it because it would be a waste of time? And like Charles Dickens' The Christmas Carol, the amount of damages that you collect weren't worth it? He won the battle and lost the war. Does that then mean that his litigation is in bad faith? Not at all. No. You should be arguing the facts in this case are manifest that whatever happened, this is not a bad faith prosecution. Forget about what the experts told your client in good faith or otherwise. Thank you. I also wanted to make clear what was stated earlier about whether or not the legend of property of Peter Francis Geraci was located on the computer and where that came from is in the Section 5 hearing we heard testimony from Katrina Sutphin and it was hearsay. She sat next to one of Mr. Geraci's competitors on a plane who had said he had been to Legal Helper's office in downtown  That's not on the screen. Also to address Justice Shostak's point of wasn't GAP, the word GAP found in documents or something produced by LH1 and the answer is it's in the source code. When Mr. Ryan compared the two source codes, those letters are You submit that GAP stands for Geraci Automated Program and I don't believe that's in dispute. Didn't somebody, didn't Amidon say that it stood for Gaining Proud and that he had written it and that's what it stood for? Yes, you're right that it must be in dispute then. Another point going to misappropriation after this 2003 date, Amidon had admitted in his testimony that deposition that he uses GAP in his toolkit and what that means is when a programmer has a toolkit they are using code and work that they had produced before as they move to different jobs. So I think that that's clear misappropriation and if he's continuing to use it after 2003 then that would be the case. This case comes down to the fact that there are numerous issues of fact, numerous. We have competing expert opinions. This should not have been decided on summary judgment. Mr. Geraci is here. Thank you. Ms. Shoup, rebuttal argument on the fees issue. You've heard a lot about the misappropriation aspect and not a lot on the whether or not Gepsi is a trade secret. To have a trade secret claim and proceed on that that trade secret was misappropriated. Here's what I think the huge issue I'm seeing before us is whether or not there was a trade secret seems to be in dispute, which tells me this may be an issue for the trier effect. I understand we're working towards your fee issue, your Section 5 issue, but I think in order to get there we have to determine whether or not there is a dispute as to whether or not there's a trade secret. Well, to have something that's a trade secret it has to have a degree of uniqueness and that's what the case law says. And what was presented at summary judgment, and again I'll direct you back to the two statements of undisputed facts, was that all of these various components of Gepsi were obvious and commonly used in software applications. Well, that's what you say. But there is a dispute as to whether or not Gepsi was made specifically by Geraci's office specifically for him and that he melded in, maybe there were some aspects of Gepsi that are common, but he melded into that in conjunction with the Pribble case things that would make it unique to him. Isn't that correct? There wasn't evidence on that point. That was the argument that he made, but what the evidence showed was that not only were the features and functions of this particular program ordinary and rudimentary, but as a whole this software program that Mr. Geraci has claimed as his trade secret doesn't do anything different or special than the number of other legal practice management programs available on the market and the number of general database management programs that are available on the market. Simply, can't you make a reasonable inference based upon the actions that were taken by all of these parties with respect to signing off on it, blocking it in his office, signing something after he's fired saying, oh, I'm not going to take this. Can't we, can't the trier of fact in the trial court for that instance, the trier of fact at the summary judgment hearing, can't they make a reasonable inference that there is something special or secret about these programs and that that would then make it an issue for the trier of fact? Well, as Justice McLaren said, you can take anything and lock it up, but that doesn't make it a trade secret. And what the Illinois Trade Secret Act requires is that something has economic value because of its secrecy and is the subject of efforts to maintain that secrecy. So just because you take something and you lock it in a server room and you tell everybody don't disclose this and you make all of your employees sign agreements, which by the way, there was never any evidence to the effect that the legal helpers defended signed such agreements. You can take all the efforts in the whole world to maintain the secrecy of something, but it doesn't make it a trade secret unless it's got the evidence of economic value tied to secrecy. And if you look at what Mr. Gerasi did prior to filing this suit, you will see that he made no efforts to determine whether or not what he had was actually a trade secret before he filed this suit. But as your opponent points out, it's not like a Med-Mal case where you have to have an affidavit ahead of time saying you have an expert who looked at this case and certified that it's a legitimate claim. Do you have that in a trade secret case? Well, we don't have that, and that's because no Illinois court has interpreted Section 5 of the Illinois Trade Secret Act to date. And we would submit that a trade secret plaintiff has to have evidence on both points of a trade secret claim before going forward. First, that it's a trade secret, and second, that there's some evidence of misappropriation. Everything that you've heard today goes directly to the second point, which is the misappropriation. What you have not heard is what evidence did Mr. Gerasi have that this program was a trade secret before he filed this case. And that's because he didn't have any. He did not look at Zachary or how it was used in his product. He didn't learn what components from GAFC were lifted directly out of sales control, which was a commercially available product. And there were a number of databases and functions that were lifted directly from sales control. Are you asking us to rewrite the code for the act to include, in essence, an affidavit requirement? We're not asking you to rewrite the act to include an affidavit requirement. However, what we are asking is that this court interpret Section 5 to require a trade secret plaintiff to make a good faith investigation of both aspects of a trade secret claim before it proceeds with a case. And the trial court found a good faith investigation in that? What the trial court said was that Mr. Gerasi appeared to have been relying on what his attorneys and his experts told him, and that the conversations that he had with Ms. Sutphin and various other individuals at least gave him a suspicion that his program was being used. What was noticeably missing from the trial court's ruling was any good faith effort by Mr. Gerasi to determine whether or not GAFC was a trade secret before he filed the suit. And so we would submit that this court should reverse the ruling on the Section 5 motion and demand for further proceedings. I have a question, too. In the last two or three minutes... Counsel. I'm sorry. I'm sorry. The last two or three minutes you were claiming that the program was not a trade secret because it wasn't novel. It was mundane. It was the norm. And then even if it weren't, there would have to be a misappropriation established. And it seems to me like you're arguing that even if you had taken the program verbatim and used it on your computers without infotapes being mentioned, but otherwise any way you wanted to, that because it's mundane and normal and so on and so forth, that it would not be deemed a trade secret and this wouldn't be considered actionable in any way, shape or form. So it seems like you're arguing that whether or not there are 50 percent identity in code lines or code source,  is really not material. You're claiming that it's not a trade secret because it's just the normal standard operating procedure. And as such, if you can climb onto it and take it, it's yours. Is that what you've been arguing? Or did I misunderstand what you've been saying? A couple points on that, Your Honor. First, you are correct. We are saying this is not a trade secret because this is nothing more than a generally known process with no superior advances. With respect to the misappropriation, I wouldn't say that the evidence that was presented with respect to the misappropriation part of it is not material to this case. I mean, I think that the undisputed evidence at summary judgment showed that these programs only had a 25 percent similarity in code. That was undisputed. And beyond that, there was no copying of GAPC into LH1 after the October 13, 2003 date. I would agree with you that whether we're looking at this program before October 13, 2003, it's not a trade secret. Or whether we're looking at it after that date, it's still not a trade secret. But we also believe that we presented sufficient evidence to show that nothing here was misappropriated if, in fact, a trade secret exists, which it does not. Are software programs that are sold at retail protected because they're copyrighted? How is it that those people have the ability to sue for damages in the event that you don't pay the retail price and you merely copy what someone else has purchased onto your computer? That would be copyright. It's a copyright violation. Thank you. I have no further questions. I would like to thank the attorneys for their arguments. We'll take a short recess. The case will be taken under revising.